FILED
DISTRICT COURT OF GUAM
JUL 13 2005
MARY L.M. MORAN
CLERK OF COURT

# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM



| | |
|---|---|
| ISARAEL DUARTE-ROSAS,<br><br>Defendant-Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent. | Criminal Case No. 98-00219<br>Civil Case No. 04-00021<br><br>**O R D E R** DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE<br>[28 U.S.C. § 2255] |

Petitioner Isarael Duarte-Rosas filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. The Petitioner claims that in light of the Ninth Circuit's decision in *United States v. Cabaccang*, 332 F.3d 622, *clarified by* 341 F.3d 905 (9th Cir. 2003) (en banc) his conviction is invalid. After careful consideration of the moving, opposing, and replying papers, the Court finds no basis for the relief as requested and DENIES the Petitioner's motion.

## I. BACKGROUND

On September 25, 1998, Duarte-Rosas pled guilty to one count of Conspiracy to Import Heroin, in violation of 21 U.S.C. §§ 952(a) and 963. At the time of his plea, Duarte-Rosas stipulated to facts contained in his plea agreement that "beginning in 1994 and continuing to September 1998, [Petitioner] participated in a conspiracy with others to import heroin from California and elsewhere, into Guam for purposes of distribution and profit." Plea Agreement at ¶ 7(c). During the conspiracy, Petitioner met with co-conspirators in Guam and arranged to send heroin to Guam via the United States Postal Service. On September 22, 1998, Petitioner met with co-conspirators at the Mai'Ana

Hotel in Tamuning in order to receive payment from previous heroin shipments. Petitioner was arrested after discussing with others future prices and shipments of heroin into Guam. Plea Agreement, ¶¶ 7(c), (d).

The complaint issued on September 23, 1998, one day after Petitioner's arrest, and the information and plea agreement both issued two days later on September 25, 1998. In the plea agreement, Petitioner agreed to "fully and truthfully cooperate with federal law enforcement agents concerning their investigation of the importation, possession, and distribution of controlled substances and related unlawful activities." Plea Agreement, ¶ 2. In exchange for his cooperation, the government agreed to recommend the minimum term of incarceration and to move for a downward departure at the time of sentencing. *Id.*, ¶ 5. Additionally, Petitioner explicitly agreed to waive any right to appeal or collaterally attack the conviction. *Id.*, ¶ 8.

More than four years after Petitioner pled guilty, the Court sentenced Duarte-Rosas to ninety-seven (97) months imprisonment on May 8, 2003. The judgment of conviction was entered on May 14, 2003. Duarte-Rosas did not file a notice of appeal within ten (10) days after entry of the Court's judgment. His conviction became final on May 24, 2003. *See* Fed R. App. P. 4(b); *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2000). On April 13, 2004, Duarte-Rosas, incarcerated and represented by attorney Howard Trapp, brought this Motion pursuant to 28 U.S.C. § 2255.[1]

## II. WAIVER

In Petitioner's plea agreement, Petitioner clearly and explicitly waived his right to collaterally attack his conviction. Plea Agreement, ¶ 13. The only avenues left open for attack are the validity of the plea agreement or an appeal of the sentence. Petitioner contests neither the validity of his plea agreement nor his sentence. Instead, Petitioner seemingly argues that his conviction is void and the resulting sentence is not authorized by law.

However, upon review of the plea agreement, it is clear that Petitioner knowingly waived his right to make such an argument and to file a § 2255 motion. The right to file a § 2255 petition is statutory and, thus, may be waived as part of a plea agreement. *United States v. Pruitt*, 32 F.3d 431,

---

[1] As Petitioner brought the § 2255 motion within one year following the date on which the judgment of conviction became final, Petitioner's motion is timely. *See* 28 U.S.C. § 2255, ¶ 6(1).

433 (9th Cir. 1994). When entering into the plea agreement with Petitioner, the government bargained for the benefit of knowing that the conviction against Petitioner would not be disturbed by, for example, a subsequent change in the Ninth Circuit's interpretation of the importation statute. Although *Cabaccang* changed the Ninth Circuit's interpretation of the law of importation, the *Cabaccang* holding was not so novel and surprising that it was not within the contemplation of the defendant and defense counsel at the time of the plea. *See Cabaccang*, 332 F.3d at 632 (citing *United States v. Ramirez-Ferrer*, 82 F.3d 1131, 1137 (1st Cir. 1996)). Additionally, because the plea agreement expressly waives the right to file a § 2255 motion, the Court can only assume that such a waiver was critical to reaching the agreement.

In exchange for Petitioner's plea of guilty and waiver of this right, among others, the government may have foregone additional charges and the opportunity to seek a greater sentence. In entering into the plea agreement, the government received the benefit of knowing that the conviction against Petitioner would not be disturbed by a § 2255 motion. Indeed, on the facts of this case, it appears that Petitioner and the government engaged in a sort of charge bargaining, rather than plea bargaining. The complaint issued on September 23, 1998 and the information and plea agreement both issued on September 25, 1998. The only charge against Petitioner was the offense to which he pled guilty– Conspiracy to Import Heroin in violation of 21 U.S.C. §§ 952(a), 960, and 963. Had the case against Petitioner proceeded at a normal pace and manner, the government could have charged Petitioner with additional crimes, at least some of which may have remained viable notwithstanding *Cabaccang*. In such a situation, the Court cannot assume that an explicit waiver of the right to attack the conviction was involuntary.

As a practical matter, fast-track plea bargains like Petitioner's are beneficial to all parties involved. The criminal defendant benefits because he or she frequently receives a significantly reduced sentence and a speedy disposition. The government and law enforcement benefit because they often receive assistance with on-going investigations as part of the deal. The court system also benefits from a speedy resolution.

If courts were to invalidate agreements years after they were reached, despite an express waiver of a defendant's right to attack the conviction, the government would be greatly

disadvantaged. No longer could the government rest assured that the conviction would stand in spite of changes in statutory interpretation. Instead, the government would know that it could be required to dust off old investigations and seek out witnesses with faded memories if, at any point while the defendant is serving his sentence, the Ninth Circuit were to change its mind with respect to the meaning of the relevant statute. Such an outcome could significantly diminish the government's incentive to engage in charge bargaining at the beginning of a case and, in turn, diminish the likelihood that a defendant will be able to obtain a reduced sentence.

As previously noted, Petitioner's waiver did not extend to a challenge of the validity of his plea agreement. A guilty plea may be attacked as involuntary if the record reveals that "neither the defendant, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged." *See Bousley v. United States*, 523 U.S. 614, 619, 118 S. Ct. 1604, 1609 (1998). However, Petitioner does not claim that the plea agreement is invalid. This Court cannot *sua sponte* change Petitioner's attack on his conviction into an attack on his plea agreement. *United States v. Barron*, 172 F.3d 1153, 1158 (9th Cir. 1999). Because Petitioner's plea agreement expressly waived his right to collaterally attack his sentence and because Petitioner does not attack the validity of the plea agreement, Petitioner's § 2255 motion is improper.

### III.  PROCEDURAL DEFAULT

Even if Petitioner had not expressly waived his right to attack his conviction, Petitioner has procedurally defaulted his claim. Prior to filing the instant § 2255 motion, Petitioner never appealed his sentence or conviction on any ground. "In failing to do so, [P]etitioner procedurally defaulted the claim he now presses." *See Bousley*, 523 U.S. at 621, 118 S. Ct. at 1610. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" *Id.* at 622, 118 S. Ct. at 1611.

Petitioner argues that he did not previously raise the argument that his conduct is not prohibited by § 952(a) because that argument was foreclosed by settled Ninth Circuit law until June 6, 2003, after Petitioner's time to appeal had expired. The rule announced in *Cabaccang* was not so novel that it was utterly unavailable prior to the Ninth Circuit's decision. *See Reed v. Ross*, 468

U.S. 1, 16, 104 S. Ct. 2901, 2910 (1984). In fact, as early as 1982, courts have doubted the validity of a border search of an airplane that traveled through international airspace en route between known points of origin and destination within the United States. *See United States v. Garcia*, 672 F.2d 1349, 1357-58 (11th Cir.1982), *as cited by Cabaccang*, 332 F.3d 622, 626-27 (9th Cir. 2003). As the Supreme Court has clearly stated, "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623, 118 S. Ct. at 1611 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35, 102 S. Ct. 1558, 1573 n.35 (1982)). Thus, Petitioner's argument that his procedural default should be excused because of futility fails.

Additionally, Petitioner cannot demonstrate that he is actually innocent of the charge of importation. To demonstrate actual innocence, Petitioner has the burden of showing that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28, 115 S. Ct. 851, 867-68 (1995)). In order to rebut a claim of actual innocence, "the Government is not limited to the existing record" and "should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during the petitioner's plea colloquy." *Id.* at 624, 118 S. Ct. at 1611-12. The difficulty with this case, as predicted by Justice Scalia's dissenting opinion in *Bousley*, is that there is virtually no way for this Court to determine whether, following a complete indictment and a full trial, a reasonable jury would have convicted Petitioner. *See Bousley*, 523 U.S. at 635, 118 S. Ct. at 1617 (Scalia, J. dissenting). As discussed above, there is no indictment in this case, only a complaint, an information, and a plea agreement. The one charge contained in the indictment is Conspiracy to Import Heroin. Although the Court could speculate as to what additional charges the government could have pursued, nothing in the record would support such speculation. Without a full trial record to review, the inquiry as to whether it is more likely than not that no reasonable jury would have convicted Petitioner becomes virtually meaningless.

Furthermore, the factual basis contained in the plea agreement leaves open the possibility that Petitioner may be actually guilty of conspiracy to import heroin even after *Cabaccang*. *See Bousley*, 523 U.S. at 625 n.3, 118 S. Ct. at 1612 n.3. The plea agreement expressly states that "defendant participated in a conspiracy with others to import heroin from California *and elsewhere* into Guam

for purposes of distribution and profit." Plea Agreement, ¶ 7(c) (emphasis added). Although Petitioner contends that "and elsewhere" is meaningless boilerplate language, the Court cannot simply assume that to be true. Presumably, when the government entered into the plea agreement, it believed that an admission of transporting heroin from California to Guam would be legally sufficient. The language "and elsewhere" plainly means somewhere other than California. This "and elsewhere" language alone obviously does not conclusively show that Petitioner is guilty of post-*Cabaccang* importation. However, it also does not conclusively show actual innocence of post-*Cabaccang* importation. The difficulty arises because, rather than attempting to meet his affirmative burden of showing actual innocence, Petitioner has chosen instead to rely only on the lack of facts in the flimsy factual basis of the plea agreement. Essentially, Petitioner argues that because the government offered only these few facts in tendering the plea agreement to the court, the government would have only been able to offer the same few facts to a jury at trial. This argument defies both experience and logic.

While this Court absolutely accepts and agrees that the "concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system," this Court cannot permit a Petitioner who has pled guilty pursuant to a fast-track plea agreement with a minimal factual basis to demonstrate actual innocence by, years later, simply pointing to that minimal factual basis without offering anything further. *See Schlup v. Delo*, 513 U.S. 298, 325, 115 S. Ct. 851, 866 (1995). Petitioner has offered no affirmative proof– not even his own sworn declaration– that he is actually innocent of the crime to which he pled, let alone offer any proof that he is actually innocent of additional more serious charges that the government forwent in the course of bargaining. Without any showing by Petitioner that it is more likely than not that no jury, after a full and complete trial, would find Petitioner guilty of Conspiracy to Import Heroin or any other more serious crime the government could have charged him with, this Court cannot excuse Petitioner's procedural default.

///

///

///

## IV. DISPOSITION

For the reasons stated above, the Court DENIES Petitioner's motion.

IT IS SO ORDERED.

DATED: July 7, 2005

*David O. Carter*
DAVID O. CARTER
United States District Judge[*]

Notice is hereby given that this document was entered on the docket on July 13, 2005. No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: Marilyn B. Alcon  7-13-05
Deputy Clerk / Date

---

[*] The Honorable David O. Carter, United States District Judge for the Central District of California, by designation.